BERRIEN SPRINGS WATER-POWER CO. *v.* BERRIEN CIRCUIT JUDGE.

1. CONSTITUTIONAL LAW—EMINENT DOMAIN—WATER POWER.
   It is beyond the power of the legislature to authorize the condemnation of land for the purpose of creating a water power which, when erected, may be used for public or private purposes at the option of the proprietor. So *held* where the corporation claiming such right was organized to sell and supply water and water power for mining, milling, manufacturing, domestic, municipal, and agricultural purposes, and to furnish people in the vicinity with electricity.

2. SAME—PRIVATE USES.
   Land can be taken, under the power of eminent domain, for a legitimate public purpose, even though a private purpose will be thereby incidentally subserved; but in such case the taking must be limited to the public necessity.

3. SAME—NAVIGABLE WATERS—DAMS—PUBLIC NECESSITY.
   The fact that the construction of a dam will result in improv-

ing the navigability of a stream does not establish the public necessity for taking lands that will be flooded as the result of such project, but the question of necessity must be determined by a jury, as in other cases.

4. SAME.

    2 Comp. Laws, § 6814, subd. 6, purporting to authorize corporations organized under the act of which it is a part to condemn land for the construction of a navigable waterway, with appurtenant water power, which may be used for private purposes, but containing nothing to indicate that the public necessity for the waterway shall limit the exercise of such right, is unconstitutional.

*Mandamus* by the Berrien Springs Water-Power Company to compel Willis B. Perkins, circuit judge, presiding in Berrien county, to vacate an order dismissing a petition to condemn certain land. Submitted February 17, 1903.   (Docket No. 209.)   Writ denied April 21, 1903.

*Fred A. Baker* (*O'Hara & O'Hara* and *Fred P. Delafield*, of counsel), for relator.

*M. L. Howell* and *G. M. Valentine* (*Benton Hanchett*, of counsel), for respondent.

CARPENTER, J.   In *Valentine* v. *Berrien Springs Water-Power Co.*, 128 Mich. 280 (87 N. W. 370), this court held that relator had a right to proceed to erect a dam across St. Joseph river.   To carry out this project, relator filed a petition to condemn certain lands in pursuance of authority contained in the act under which it is incorporated.   Respondent dismissed said petition on the ground that that part of the act which authorized relator to condemn lands was unconstitutional.   This court is now asked to issue a *mandamus* compelling the vacation of such order.   While other questions are raised in this case, they will receive no attention, because, in our opinion, the decision of respondent was correct.

Relator was incorporated under Act No. 202 of the Public Acts of 1887, the same being found in 2 Comp.

Laws, §§ 6806–6822, inclusive. Section 1 of said act (2 Comp. Laws, § 6806) reads as follows:

"Any number of persons, not less than five, may form themselves into a corporation for the purpose of damming any stream, and of excavating and constructing, maintaining, repairing, and improving any canal already existing, or which they may wish to excavate and construct, with water power appurtenant thereto, and may own, lease, use, and control the same for the purpose of accumulating, storing, conducting, selling, furnishing, and supplying, upon an agreed rental, water and water power for mining, milling, manufacturing, domestic, municipal, and agricultural purposes, and for purposes of navigation."

Section 9 (2 Comp. Laws, § 6814), subd. 6, reads as follows:

" In any case where the company is unable to agree with the owners of land needed for or in the work of constructing a navigable waterway, as herein provided, or cannot agree with any highway commissioner, or other authority, as to the crossing or changing of roads, streets, or streams, then and in all such cases the same laws providing for the incorporation of railroad companies, and providing for the condemnation of lands to the public use in certain cases, shall govern and be the rule of action or procedure so far as practicable; and any company undertaking to construct a navigable waterway, with or without water power appurtenant thereto, and intending to do a transportation business upon such waterway, shall have the same rights and privileges for procuring right of way, needed lands, or real estate of any kind, or of crossing streams and highways, as the laws of Michigan allow railroad companies."

Section 11 (2 Comp. Laws, § 6816) reads as follows:

" Such company may furnish water to other persons or companies for mining, manufacturing, milling, domestic, municipal, or agricultural purposes, on such rent as shall be agreed upon by and between it and those desiring to obtain it, or it may use the same for such purposes itself in any class of manufacturing purposes. It is authorized to bring suit to enforce the payment of such rent in any proper court of the county where its principal office is located."

Relator's articles of incorporation, as amended, specify its business and objects as follows:

"1. To construct and maintain a dam across the St. Joseph river, at or near the village of Berrien Springs, in said county of Berrien, and raise the water in said river from the village of Berrien Springs to the village of Buchanan, and thereby make said river between said villages a navigable waterway.

"2. To excavate, construct, and maintain canals and channels through the bars and shoals in said river, and thereby further improve the navigability of said river.

"3. To construct, maintain, and operate water power appurtenant to said dam and waterway, and to own, lease, use, and control the same for the purposes of accumulating, storing, conducting, selling, furnishing, and supplying, upon an agreed rental, water and water power for mining, milling, manufacturing, domestic, municipal, and agricultural purposes, and for purposes of navigation; and also to produce and supply the village of Berrien Springs and the inhabitants thereof, and the inhabitants of said townships of Oronoko, Berrien, and Buchanan and the vicinity thereof, with electricity for lighting, heating, and motive purposes, for which the same is or may become of practical use; and to acquire, hold, lease, and convey lands or water power, as may be necessary or convenient for the purposes above specified.

"4. To do a transportation business upon such waterway."

In its petition for condemnation, relator alleges that it requires the lands proposed to be condemned "for the purposes of its incorporation, and that the taking thereof is necessary for the public use and benefit."

Relator is, then, by these proceedings, seeking to condemn land which will be overflowed as a result of its damming St. Joseph river, a navigable waterway. Relator's project is to make the stream navigable—or, to be more accurate, to improve its navigability—for the double purpose of carrying on a transportation business and to obtain a water power. This water power relator will own, lease, use, and control for the purposes heretofore indicated in the law and in its articles of incorporation. While

some of these purposes may be public, it is clear that many of them are private. See *Ryerson* v. *Brown*, 35 Mich. 333 (24 Am. Rep. 564). After the water power is erected, though it may be used for a public purpose, relator has the option to use it entirely for private purposes. Says the supreme court of Wisconsin in a similar case:

"And it is equally certain that if the power be alternative and optional, either for a public or for a private use,—to construct a dam, to be used, when constructed, either for the purpose of waterworks or for the purpose of leasing the water power for manufacturing purposes, in the discretion of the city,—it cannot be upheld. It seems too plain for discussion that if the legislature grant an equivocal power, subject to the election of the grantee, for either one or other of two purposes, the one lawful and the other unlawful, the power cannot be upheld upon the chance of its being lawfully applied." *Attorney General* v. *City of Eau Claire*, 37 Wis., at page 437.

It results from this reasoning, which meets our approval, that we are bound to regard said water power as private in its character, and to hold, therefore, that, under our Constitution, land cannot be taken for the purpose of creating it.

If relator has the power of condemnation in this case, it obtains the same by subdivision 6 of section 9, heretofore quoted, and by that part of said subdivision which reads as follows:

"And any company undertaking to construct a navigable waterway, with or without water power appurtenant thereto, and intending to do a transportation business upon such waterway, shall have the same rights and privileges for procuring right of way, needed lands, or real estate of any kind, or of crossing streams and highways, as the laws of Michigan allow railroad companies."

Assuming, but without deciding, that this language is broad enough to authorize condemnation in cases where it is sought to improve the navigability of a stream already navigable, the question arises whether the statute is constitutional, when the land is taken, as in this case, where

the improvement of the navigability is intended to secure water power to be used for private purposes, as well as to enable the carrying on of a transportation business.

Land cannot be taken, under the exercise of the power of eminent domain, unless, after it is taken, it will be devoted to the use of the public, independent of the will of the corporation taking it. *Ryerson* v. *Brown,* 35 Mich. 333 (24 Am. Rep. 564); *Board of Health* v. *Van Hoesen,* 87 Mich. 533 (49 N. W. 894, 14 L. R. A. 114). It follows from the above principle, as well as from general reasoning, that, where the corporation intends to devote said land both to public and private uses, only so much can be taken as is necessary to the public use.   See Cooley, Const. Lim. (6th Ed.) 664.   In this case relator proposes to improve the navigability of a stream for the double purpose of carrying on a transportation business, which we may admit to be public, and for the purpose of furnishing water power, which it may own, lease, and use for private purposes.   The statute authorizes a company constructing a navigable waterway, with water power appurtenant, to take the "needed lands or real estate." This obviously, in form at least, grants relator the right— and by its petition we are bound to say it asserts the right —to take such land as is needed in its work of constructing "a navigable waterway, with water power appurtenant thereto."   Though, under the law, no more land may be taken than will improve the navigability of the stream, so much will be taken as is necessary to make a navigable waterway, with private water power appurtenant thereto. The taking is not limited to what is required by the public necessities in the improvement of the navigability of the stream, and the law contains no provision by which the taking can be limited to such public necessities.   While many public advantages may result from improving the navigability of the stream, the only one indicated in the statute is the transportation business to be carried on. Inasmuch as the statute is silent as to the character of such transportation business, it is clear that its demands

and necessities in no way limit the taking of the land. It is equally clear that the necessity of other public uses (not specified in the statute) of the improved navigability of said stream does not limit such taking.

Is the statute, which authorizes the taking of such land as is needed in the work of improving a navigable waterway with water power appurtenant thereto, a valid, constitutional enactment? It may easily happen—indeed, it is quite probable—that the appurtenant water power may require a higher dam, and, consequently, a taking of more property, than is demanded by the transportation business to be carried on, or by any other public necessity for said navigable waterway. If the fact that the taking results in improving the navigability of a stream proves said taking to be a public necessity, the statute is constitutional, notwithstanding the fact that one of the purposes of improving the navigability of the stream is to obtain a water power; for land can be taken, under the power of eminent domain, for a legitimate public purpose, even though a private purpose will be thereby incidentally subserved. *Toledo, etc., R. Co.* v. *East Saginaw, etc., R. Co.*, 72 Mich., at page 227 (40 N. W. 436); *South Chicago R. Co.* v. *Dix*, 109 Ill., at page 243. But it cannot be said, nor is it true, that, because the taking results in improving the navigability of a stream, its public necessity is thereby proved. Under the Constitution of Michigan, art. 18, § 2, the necessity for the taking, as well as the compensation for the property, must be determined by a jury, or by commissioners appointed by a court of record. This constitutional tribunal, and not the legislature, must determine whether public necessities require this improvement in the navigability of St. Joseph river. *Powers' Appeal*, 29 Mich., at page 510. It cannot be said, as a matter of law, that public necessity requires improvements to be made in a navigable river, any more than it can be said, as a matter of law, that public necessity requires a railroad to be built. See *Mansfield, etc., R. Co.* v. *Clark*, 23 Mich. 524.

The fact that, under this law, land cannot be taken until the public necessity therefor has been determined by the tribunal to whose determination that matter is by the Constitution submitted, does not answer the objections to its constitutionality.  The question submitted to that tribunal will be substantially as follows: Does public necessity require that the land specified in relator's petition shall be taken to so improve the navigability of St. Joseph river that relator can operate thereon a transportation business and can obtain thereby' the water power it desires?  The question of public necessity thus submitted is not confined to the public necessity requiring the improvement of the navigability of the river, but extends also to the necessity requiring the construction of a water power, which, as has already been shown, this court is bound to declare private in its character.  The constitutional tribunal for condemning land cannot find that public necessity requires a taking for private purposes.  *Ryerson* v. *Brown*, 35 Mich. 333 (24 Am. Rep. 564).  Yet by the act under consideration that tribunal is authorized to make such a finding, and, by making it, take property for a private purpose.

The act is, therefore, unconstitutional, and relator's prayer for a *mandamus* must be denied.

The other Justices concurred.